*175 Jones, J.
On this appeal we are asked to hold that under ,the terms of a commercial mortgage, the corporate mortgagor is entitled in a proceeding under CPLR article 77 to an accounting with respect to installment payments made to the institutional mortgagee on account of real estate taxes on the mortgaged premises. The ultimate objective of the mortgagor is to establish its right to the income, if any, realized by the mortgagee with respect to the moneys paid into the tax account. In the circumstances disclosed in this record we conclude that this mortgagor is not entitled to such an accounting.
Appellant, a business corporation which for several years had owned and operated an apartment complex in White Plains, entered into an agreement with respondent Savings Bank pursuant to which the latter made a $450,000 loan secured by a first mortgage on the apartment complex premises. In addition to the customary mortgage provisions with respect to the mortgagor’s obligations to repay principal with interest and to maintain the mortgaged premises, the mortgage contained a now familiar agreement to make installment payments on account of real estate taxes on the mortgaged premises. In this instance that agreement was expressed as follows: ‘ ‘ That in order more fully to protect the security of said mortgage, together with and in addition to the monthly payments of principal and interest provided for in the bond which this mortgage secures, the mortgagor will pay to the mortgagee on the first day of each month until the said principal sum is fully paid, an installment of the taxes levied or to be levied against said premises. Such installments shall be equal, to the estimated taxes next due (as estimated by the mortgagee) less all installments already paid therefor, divided by the number of months that are. to elapse before one month prior to the date when such taxes will become due. The mortgagee shall hold such monthly payments in trust to apply the same against such taxes, when due, with the right, however, to the mortgagee to apply, after default, any sums so received, as provided in Clause ‘ 38 ’ hereof,”
*176 'At the closing the mortgagor’s secretary-treasurer inquired about payment of interest on funds in the tax account and was told that interest would not be paid. A month and a half after the closing mortgagor requested that the bank hold the tax moneys in a separate interest-bearing account and account to the mortgagor at least semiannually therefor. On the mortgagee’s refusal to recognize the claims asserted by it the mortgagor instituted the present proceeding under article 77 for an accounting of the payments received together with income earned thereon and for judgment against the mortgagee for all interest income earned.
Special Term concluded that the mortgagor was not entitled to receive interest on payments made to the tax account nor was it entitled under a trust .theory to any profits earned on the moneys held. The Appellate Division, after modifying with respect to an issue no longer pressed, affirmed without opinion and granted the mortgagor leave to appeal to our court. In our court appellant mortgagor has abandoned any claim to interest as such and urges only its right to a trust accounting and its entitlement to any earnings shown to have been realized by the mortgagee.
In the circumstances of the relationship between these parties it does not advance our inquiry into the determination of the rights of the mortgagor or of the obligations of the mortgagee to proceed in reliance on .categorical concepts suggested by such labels as “ trust “ agency ”,“ escrow “ debtor-creditor ”, for it must be evident that the relationship here does not fall essentially under any one of such classical headings or any identifiable combination of them. Reasoning predicated on such concepts would accordingly be untrustworthy. We cannot, for instance, ground any conclusion on the use of the words “ in trust ” in this particular mortgage clause. Resolution of the issues must depend rather on what rights and obligations the parties are found to have intended to create as manifested by the words they used in their written agreement, with parol evidence admissible to clarify ambiguities, if any, under recognized canons of construction.
Preliminarily we note that the case is before us on the bank’s motion to dismiss the petition for failure to state a cause of action. Pursuant to the provisions of CPLR 3211 (subd. [c]) *177 the parties submitted affidavits and the courts below have in effect treated the motion as a motion for summary judgment. The affidavits submitted by the parties raise no issues of fact or credibility, anticipate the availability of no additional extrinsic evidence, and identify no factual inferences to be drawn from extrinsic evidence. In this- circumstance then there is no occasion for fact-finding by a jury .and the issue is to be determined by the court as a matter of law. (Hartford Acc. & Ind. Co. v. Wesolowski, 33 N Y 2d 169,172; Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 290-291.)
We observe that the written expression of the agreement of the parties contains no explicit provision, one way or the other, with respect to payment of interest or earnings on the tax payments. The payment of interest or earnings was not indispensible to effectuate the objectives of the mortgage agreement and there is no other provision of the written instrument from which it may be inferred that the parties intended that there be payment of interest or earnings. Indeed, from the parties’ silence the inference m'ay be drawn that no such payment was intended. Even the canon of construction that a written instrument is to be interpreted against the party responsible for its draftsmanship cannot be employed conclusively to fill hiatuses in the instrument or to supply terms as to which the parties themselves omitted to make any provision. There being no express agreement of the parties and no predicate for any inference that such an agreement was intended, we conclude that this mortgagor is not entitled to the relief it now seeks.
To the extent that it might be argued that the mere absence of an express provision that the mortgagor would not be entitled to any payment, in the context of the mortgagor-mortgagee relationship, creates an ambiguity .as to the intention of the parties, we turn to the relevant parol evidence to resolve any such ambiguity. Here we have the undisputed proof as to what was said when the agreement was signed at the closing. That evidence explicitly confirms the earlier inference that no payment was intended. While it may be said that only the word " interest ” was then used, in context we can only conclude that this mortgagor intended, when the question was asked and answered, to inquire whether the bank as mortgagee would make any return payment, however characterized, with respect *178 to moneys paid by .the mortgagor into the tax account. The answer was a categorical “ no ”.
The officers of this corporate mortgagor were clearly experienced in real estate financing; contentions that this was a contract of adhesion which might be made were the relative statuses or the relationship of the parties different, are not available. We can only conclude that the mortgage papers in this instance were executed and the proceeds of the loan received without expectation of payments of either interest or earnings.[1]
To the extent that as a matter of public policy restrictions should be placed on the absolute freedom of either party to an agreement of the sort here involved to impose terms on the other, the issue is one for legislative address. By enactment of chapter 119 of the Laws of 1974, sections 14-b and 5-601 were added to the Banking Law and the General Obligations Law, respectively, to require the payment of interest, at rates set by the Banking Board, on tax accounts with respect to mortgages on one to six-family owner-occupied residences commencing July 1,1974.[2]
Accordingly the order of the Appellate Division should be affirmed.

. We note that the basic issue here involved has been confronted elsewhere. Some decisions have upheld the position of the mortgagee (e.g., Manchester Gardens v. Great West. Life Assur. Co., 205 F. 2d 872; Tucker v. Pulaski Fed. Sav. & Loan Assn., 252 Ark. 849; Durkee v. Franklin Sav. Assn., 17 Ill. App. 3d 978 [also Zelickman v. Bell Fed. Sav. & Loan Assn., 13 Ill. App. 3d 578; Sears v. First Fed. Sav. S Lorn Assn., 1 Ill. App. 3d 621]; Yudkin v. Avery Fed. Sav. & Loan Assn., 507 S. W. 2d 689 [Ky.]; Richman v. Security Sav. & Loan Assn., 57 Wis. 2d 358). Other eases support the mortgagor (e.g., Carpenter V. Suffolk Franklin Sav. Bank, — Mass. —, 291 N. E. 2d 609; Buchanan v. Brentwood Fed. Sav. & Loan Assn., — Pa. —, 320 A. 2d 117).

. We note the pendency of litigation challenging the 1974 legislation (Jamaica Sav. Bank v. Lefkowitz, in the United States District Court for the Southern District of New York). It is our intention that nothing in the decision in this case or in the expression of our opinion should be understood as bearing even indirectly on the issues raised in that or any similar litigation.