■ PHILIP BRAVERMAN et al., Appellants, v FRED SPRINGER et al., Respondents.—In an action for an accounting and to recover punitive damages, the plaintiffs appeal from an order of the Supreme Court, Queens County (Lonschein, J.), dated February 3, 1986, which granted the defendants' motion to dismiss the complaint without leave to replead.

Ordered that the order is affirmed, with costs.

The plaintiffs Philip Braverman and Lester Braverman were partners in the Rockaway Care Center Building Company (hereinafter Building Company). The other partners in the Building Company were Fred Springer, Jay Springer and Meyer Tewkin. The Building Company's purpose was to build a nursing home in Far Rockaway, New York, which would then be leased to the Rockaway Care Center (hereinafter Care Center), which would operate the home. Fred Springer, Jay Springer and Meyer Tewkin, doing business as the Care Center, had purchased the land on which the facility would be built and drew up all the necessary specifications, and secured all necessary permits and authorizations for building and operating the facility. The facility was to be constructed by the plaintiffs' construction company.

The Building Company financed the project by operating a Federal Housing Administration (hereinafter FHA) mortgage in the amount of $4,522,300. In order to qualify for the mortgage, the Building Company signed an FHA regulatory agreement, which obligated it to pay a monthly deposit of $3,401.67 to a replacement reserve account. The main purpose of this account was to maintain a fund to assure the mortgagee that the facility being financed would not be allowed to deteriorate, thereby protecting the mortgagee's security.

The facility was ultimately built, and on June 13, 1975, a lease was entered into between the Building Company, as lessor, and the Care Center, as lessee. Subdivision B of a rider

to the lease added the following provision to article VII-A of that lease: "In addition, throughout the term of this lease and any extension or renewal thereof, Lessee shall make deposits for replacement reserves as required by the FHA as and when required by the mortgagee and/or FHA. All such deposits, when and if returnable, shall belong to the Lessee. Lessor, in such event, shall execute and deliver to Lessee, from time to time, written authorizations in favor of the Lessee authorizing it to draw upon such repair and/or replacement reserve deposit as required and Lessor, further, shall assign in writing such deposit to the Lessee upon expiration of the FHA mortgage or upon the expiration of the full term of this lease, whichever occurs first, provided, however, that Lessee shall have made such deposit pursuant to the provisions hereof. Lessor hereby appoints Lessee as its attorney in fact for these purposes".

The Care Center started making the required payments to the replacement reserve account, either through the FHA mortgagee or through the Building Company. Thereafter, interest payments on the account were made to the Care Center on the funds deposited in the replacement reserve account.

In or about July 1984 the plaintiffs commenced this action in which they sought an accounting together with "exemplary damages in the sum of $50,000", on the ground that the interest payments were the property of the Building Company and not the Care Center. The defendants thereafter moved to dismiss the complaint, pursuant to CPLR 3211 (a) (1), (3), (5), (7), and (8).

Special Term granted the defendants' motion to dismiss the complaint, without leave to replead, on the ground that it failed to state a cause of action because (1) the lease between the parties did not provide that the Building Company was the owner of the funds in the replacement reserve account, thereby entitling it to the interest until the funds were actually returned to the Care Center, and (2) the replacement reserve account was established for security purposes and therefore, pursuant to General Obligations Law § 7-103 (1), the ownership of the funds and the concomitant right to interest remained with the depositor, the Care Center.

We agree with the plaintiffs that the replacement reserve account bore none of the characteristics that would make General Obligations Law § 7-103 (1) applicable to this matter (see, Ja-Mo Assocs. v 56 Fulton St. Garage Corp., 30 AD2d 287;

*Matter of Amphitheatre, Inc.,* 405 F2d 309, *cert denied sub nom. Sturtz v New York World's Fair 1964-1965 Corp.,* 395 US 908).

Nevertheless, the complaint was properly dismissed without leave to replead on the alternative ground stated by the court. The language of the lease makes clear that the deposits in the replacement reserve fund "shall belong to the Lessee". While the written agreement contains no express provision with respect to the payment of interest on the deposits, there is no predicate, from the surrounding circumstances, for any inference that it was intended that the interest payments would belong to the Building Company. Thus, the plaintiffs were not entitled to the relief sought in their complaint *(see, Matter of Surrey Strathmore Corp. v Dollar Sav. Bank,* 36 NY2d 173). Thompson, J. P., Bracken, Lawrence and Spatt, JJ., concur.